

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| JULIAN E. WEISSNER, | ) | |
| | ) | No. 41349-7-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OUR LADY OF LOURDES HOSPITAL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

STAAB, C.J. — Julian Weissner filed a complaint alleging medical malpractice against Our Lady of Lourdes Hospital. The trial court granted summary judgment in favor of the hospital, determining that Weissner failed to supply the requisite expert testimony to establish the relevant standard of care and proximate cause. Weissner appeals, arguing the expert declaration was sufficient because it established the doctor's qualifications, set forth specific facts as a basis for his opinion, and stated that Weissner's injury was caused by negligence on a more probable than not basis. We disagree with Weissner's arguments and affirm.

BACKGROUND

Because this case was decided on summary judgment, the following facts are presented in the light most favorable to Weissner. *See Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

Julian Weissner underwent total knee replacement surgery at Our Lady of Lourdes Hospital in March 2021. While still at the facility post-surgery, Weissner became unable to urinate. Over the next several hours, a nurse inserted a "straight" catheter five times.

Eventually a "permanent" catheter was inserted. Weissner indicates that the nurses did not wash the genital area or provide a numbing agent before performing the insertion. Weissner experienced excruciating pain during the process. Following the procedure, he was released from the Hospital with instructions to go to an emergency room if any complications arose.

After returning home, Weissner experienced problems with the catheter. Later that night, he went to the emergency room at Kadlec[1] where a nurse determined that the catheter had slipped out of place. The nurse removed the catheter and administered fluids. After about one hour, Weissner was able to urinate, and he was released to go home.

---

[1] Kadlec Freestanding Emergency Room and Kadlec Urology are referenced throughout the record. There is no indication that Kadlec is the same entity as, or otherwise associated with, Our Lady of Lourdes Hospital.

Once home, Weissner began to feel ill with body aches and shaking. He was taken back to the emergency room at Kadlec by ambulance. When recalling the experience in his sworn declaration, Weissner stated: "they transported me to Kadlec Emergency and that is where my nightmare started." Clerk's Papers (CP) at 31. The nurses at Kadlec treated Weissner by inserting a "Foley" catheter. Weissner continued to experience persistent pain and difficulty urinating.

In November 2024, Weissner filed a complaint against the Hospital, alleging he received negligent health care at its facility in 2021. Kadlec was not named as a defendant in the lawsuit.

The scheduling order designated March 10, 2025, as the due date for Weissner to disclose lay and expert witnesses. When Weissner did not disclose an expert witness by the due date, the Hospital moved for summary judgment.

Weissner opposed summary judgment, supporting his response with the declaration of a board-certified urologist. After reviewing Weissner's declaration and "records from Kadlec Urology, defendant Lourdes and Kadlec Hospital," the doctor declared:

> 5.     Mr. Weissner's records reflect a consistent history of urological complaints including pain with urination, weak stream, "split stream" when urinating and "spraying." These latter complaints are not the traditional/typical complaints associated with aging or enlarged prostate.
>
> 6.     "Split stream" and "spraying" are suggestive of urethral injury in general and damage from traumatic catheterization in particular.

3

7.      Mr. Weissner's records reflect a consistent history of pain with urination, "split stream" and "spraying" since a traumatic catheterization on March 5, 2021.

8.      Mr. Weissner's Declaration reports very significant pain during the catheterization.

9.      Based upon his history, and the records, in my opinion, to a reasonable degree of medical certainty, his symptoms of pain, "spraying" and "split stream" are likely secondary to urethral injury during the catheterization.

10.     I am familiar with the standard of care for catheterization of the type he underwent.  It is a national standard.

11.     Though patients can sometimes suffer traumatic catheterizations, in my opinion to a reasonable degree of medical certainty (more probably than not) Mr. Weissman's [sic] urethral damage was due to a break in technique, representing a breach of the standard of care for catheterization.

CP at 32-33.

The declaration incorporated the doctor's resume, which reflected his education and experience specific to urology.  In addition to working as an attending urologist, the doctor regularly published research, provided lectures, and taught various courses.  The doctor's teaching experience included teaching one-day courses on "Foley Catheter Placement" and "GU System and Catheter Placement" in 2023.  CP at 35-36.

The Hospital replied, arguing the doctor's declaration was insufficient to defeat summary judgment for two reasons.  First, it argued that nothing in the declaration demonstrated the doctor's competency to testify to the standard of care for nurses in

Washington, nor did the declaration tie the alleged national standard of care to the standard of care in Washington. Second, the Hospital asserted the declaration failed to identify specific facts to support its conclusions, such as what the relevant technique involved and what act or omission constituted a "break" in such technique.

Following a hearing on the Hospital's motion for summary judgment,[2] Weissner filed a supplemental brief. He argued that an expert is not required to demonstrate specific knowledge of Washington's standard of care. Additionally, he argued the declaration showed a factual basis for the doctor's opinion because the doctor reviewed Weissner's declaration and treatment records and stated that Weissner's symptoms suggested damage from traumatic catheterization.

The court granted the Hospital's motion for summary judgment and dismissed Weissner's complaint.

Weissner appeals.

ANALYSIS

Weissner contends the court erred by granting summary judgment in favor of the Hospital. Contrary to the court's conclusion, he argues that his expert's declaration sufficiently established the doctor's qualifications, set forth specific facts as a basis for his opinion, and stated that Weissner's injury was caused by negligence "on a more

---

[2] The record does not contain the verbatim report of proceedings from this hearing.

probable than not basis." CP at 70. To the extent the declaration was insufficient to establish negligence, Weissner suggests application of res ipsa loquitur.

The Hospital maintains that the proffered expert declaration was insufficient to defeat summary judgment because it merely summarizes Weissner's allegations and asserts conclusory statements. Additionally, the Hospital argues the declaration lacked adequate foundation, the doctor opined outside his scope of expertise, and the doctor failed to establish the relevant standard of care in Washington. Finally, the Hospital asks this court to reject Weissner's theory regarding res ipsa loquitur because it was not raised below.

We agree with the Hospital.

We review orders on summary judgment de novo. *Keck*, 184 Wn.2d at 370. Summary judgment is only appropriate if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Id.*; CR 56(c). The moving party bears the initial burden of establishing that there are no disputed issues of material fact. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

In deciding a motion for summary judgment, the evidence is considered in a light most favorable to the nonmoving party. *Keck*, 184 Wn.2d at 370. If the moving party

satisfies its burden, then the burden shifts to the nonmoving party to establish there is a genuine issue for the trier of fact. *Young*, 112 Wn.2d at 225. While questions of fact are typically left to the trial process, they may be treated as a matter of law if "reasonable minds could reach but one conclusion." *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985). A nonmoving party may not rely on speculation or having its own affidavits accepted at face value. *Seven Gables Corp. v. MGM/UA Ent. Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Instead, a "nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists." *Id*.

Under RCW 7.70.040(1), the plaintiff in a medical negligence claim bears the burden of showing:

(a) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances;

(b) Such failure was a proximate cause of the injury complained of.

Generally, a plaintiff must "support each element of their medical malpractice claim with qualified expert testimony." *Campanelli v. PeaceHealth Sw. Med. Ctr.*, 34 Wn. App. 2d 24, 36, 565 P.3d 933 (2025). A medical expert "must state specific facts showing what the applicable standard of care was and how the defendant violated it." *Reyes v. Yakima Health Dist.*, 191 Wn.2d 79, 89, 419 P.3d 819 (2018). "[W]e do not require affiants to aver talismanic magic words, but allegations must amount to more than

7

conclusions . . . with a basis in admissible evidence that can support a claim." *Id.* Negligence cannot be inferred from a bad result. *Id.* "If a plaintiff lacks competent expert testimony to create a genuine issue of material fact . . . a defendant is entitled to summary judgment." *Id.* at 86.

Here, viewing the evidence in the light most favorable to Weissner, we conclude the doctor's declaration failed to create a genuine issue of material fact sufficient to support Weissner's medical negligence claim.

First, the declaration does not articulate the applicable standard of care with the required specificity. It offers only a generalized assertion of familiarity with a "national standard," without describing what that standard required under the circumstances presented here. CP at 31-33. The declaration does not identify the steps, precautions, or clinical judgments that a reasonably prudent nurse in Washington would have undertaken, nor does it connect any purported national standard to Washington practice. *See* RCW 7.70.040(1)(a).

Second, the declaration fails to identify specific acts or omissions constituting a breach. The opinion that the injury resulted from a "break in technique" is conclusory. CP at 33. It does not explain what "technique" entails in this context, how it was deviated from, or which of the multiple catheterizations allegedly caused the injury. The underlying facts in the record describe multiple straight catheter insertions, followed by placement of a permanent catheter without washing the area or providing a numbing

agent, after which Weissner experienced significant pain and later complications. Yet the doctor does not tie any particular conduct—failure to cleanse, absence of anesthetic, number of attempts, insertion method, or securing of the catheter—to a defined standard or explain how that conduct fell below the standard of care. Without such connection, the expert's opinion amounts to an inference of negligence from a bad outcome, which is insufficient as a matter of law. *Reyes*, 191 Wn.2d at 89.

The declaration is also insufficient to establish that the Hospital proximately caused Weissner's injury. Most glaringly, it is unclear whether the allegedly traumatic catheterization was performed by the Hospital or Kadlec. Although Weissner recounts his painful experiences while at the Hospital, he also states that his "nightmare started" after he was transported to Kadlec emergency. And the doctor's declaration does not opine as to which procedure performed at which facility was the origin of Weissner's injury.

Additionally, although the doctor concludes that Weissner's symptoms are "likely secondary" to urethral injury from catheterization, his opinion is not specific to an established breach of care. The declaration posits injury from "traumatic catheterization" but does not identify what made the catheterization traumatic in terms of departure from the standard of care. CP at 33.

Weissner's additional arguments do not cure these deficiencies. The expert's credentials, while notable, do not substitute for the required articulation of standard and

breach.  Nor does the expert's review of records and Weissner's declaration suffice; those materials may support an opinion, but the opinion must still disclose the governing standard and the manner of its violation.  *Reyes*, 191 Wn.2d at 89.  And while we acknowledge Weissner's account of severe pain during insertion, pain alone does not establish negligence without expert testimony explaining why the manner of insertion fell below the standard of care.

Finally, we decline to consider Weissner's argument regarding application of res ipsa loquitur because he did not raise it below.  *See* RAP 2.5(a).  Weissner states that RAP 9.12 authorizes this court to entertain his contention because the issue of negligence was before the trial court and res ipsa loquitur is a rule of evidence pertaining to negligence.  We find this argument unpersuasive.

"Res ipsa loquitur is a method of proof."  *Tinder v. Nordstrom, Inc.*, 84 Wn. App. 787, 789, 929 P.2d 1209 (1997).  "A plaintiff may rely on res ipsa loquitur's permissive inference of negligence if: (1) the accident or occurrence that caused the plaintiff's injury would not ordinarily happen in the absence of negligence, (2) the agency or instrumentality that caused the plaintiff's injury was in the exclusive control of the defendant, and (3) the plaintiff did not contribute to the accident or occurrence."  *Nguyen v. City of Seattle*, 179 Wn. App. 155, 172, 317 P.3d 518 (2014).   Under RAP 9.12, "the appellate court will consider only evidence and issues called to the attention of the trial court."  Here, Weissner failed to call to the attention of the trial court, res ipsa loquitur as

a method of establishing his prima facie case. As such, application of the doctrine is not properly before this court on appeal. *See* RAP 2.5(a) ("The appellate court may refuse to review any claim of error not raised in the trial court.").

In sum, Weissner did not present competent expert testimony establishing the standard of care, a specific breach, and proximate cause. Because Weissner failed to raise a genuine issue of material fact on essential elements of his claim, the Hospital was entitled to judgment as a matter of law. We therefore conclude the trial court properly granted summary judgment.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, C.J.

WE CONCUR:

_____
Hill, J.

_____
Cooney, J.